## MAY v HARPER HOSPITAL

Docket No. 109672. Submitted February 6, 1990, at Detroit. Decided
May 25, 1990.

Narendra Parekh underwent coronary artery bypass surgery at
Henry Ford Hospital. Helen Crowe, a student at Harper Hospi-
tal's School of Perfusion Technology, set up the equipment used
in the heart bypass procedures. Crowe had completed six
months of classes, was in her first clinical rotation at Henry
Ford, and was under the supervision of two clinical instructors
who were both Henry Ford Hospital employees. Crowe advised
one of her supervisors that there was a problem with a vent
tubing line when she set up the equipment. When Parekh was
put on the heart-lung machine, the machine pumped air into
his blood vessels instead of creating a vacuum to remove the
blood from the vessels. Parekh died as a result four days later.
Alan A. May, personal representative of the estate of Narendra
C. Parekh, deceased, filed suit against Harper Hospital and
Henry Ford Hospital in Wayne Circuit Court, alleging inter
alia that Harper was liable because of Crowe's negligence in
incorrectly attaching the tubing of the heart-lung machine.
Harper moved for summary disposition arguing that Michigan
does not recognize a claim against an educational institution
for injurious actions by its students and therefore plaintiff had
failed to state a claim upon which relief could be granted.
Harper also argued that there was no genuine issue of material
fact as to whether, under the loaned servant rule, Henry Ford
Hospital had exclusive control over Crowe and, thus, that
Harper was not liable as Crowe's employer. The court, Marvin
R. Stempien, J., denied Harper's motion, finding that plaintiff
had stated a claim upon which relief could be granted and that
plaintiff had created a genuine issue of fact as to whether
Harper relinquished all of its right to control Crowe's actions
during her rotation at Henry Ford Hospital. At trial, Harper
moved for a directed verdict on the ground that Crowe was a

REFERENCES

Am Jur 2d, Master and Servant § 415.

See the Index to Annotations under Hospitals; Loaned Employees;
Malpractice by Medical or Health Professions.

loaned servant. That motion was also denied, the court ruling that whether Crowe was acting under Harper's control was a question of fact for the jury. Following trial, the jury rendered a verdict in favor of plaintiff. Harper's motions for judgment notwithstanding the verdict and for a new trial were denied. Harper Hospital appealed, arguing that the trial court erred in finding that Crowe was not a loaned servant, that the court erred in denying its motion for a directed verdict because plaintiff failed to introduce any standard of care testimony, and that the court erred in admitting at trial an expired contract between Harper and Henry Ford Hospital.

The Court of Appeals *held:*

The trial court erred in denying Harper's motion for summary disposition and its motion for a directed verdict. When Parekh suffered his fatal injury, Harper had relinquished its right to control Crowe. She was under the supervision of Henry Ford employees, was using Henry Ford's machines and equipment, and had been instructed to conduct herself according to Henry Ford's protocols. The evidence relevant to Henry Ford's control, and Harper's lack of control, over Crowe did not present a material issue of fact upon which reasonable minds could differ.

Reversed and remanded.

1. MASTER AND SERVANT — TORTS — RESPONDEAT SUPERIOR — LOANED SERVANT DOCTRINE — CONTROL TEST.

The control test for determining whether the loaned servant doctrine applies in a case is whether in the particular service in which the servant is engaged or requested to perform he continues to be liable to the direction and control of his original master or becomes subject to that of the person to whom he is lent or hired or who requests his services; it is not so much the actual exercise of control as the right to exercise control; to escape liability the original master must resign full control of the servant for the time being; it is not sufficient that the servant is partially under the control of a third party.

2. MASTER AND SERVANT — TORTS — RESPONDEAT SUPERIOR — LOANED SERVANT DOCTRINE — CONTROL TEST.

In applying the control test for determining whether the loaned servant doctrine applies, the court must look at the work the employee was performing when the injury for which suit has been brought was sustained.

*Charfoos & Christensen, P.C.* (by *David R. Parker*), for plaintiff.

*Schlussel, Lifton, Simon, Rands, Galvin & Jackier* (by *Irene Bruce Hathaway*), for Harper Hospital.

Before: SULLIVAN, P.J., and DOCTOROFF and J. W. FITZGERALD,* JJ.

PER CURIAM. Defendant Harper Hospital appeals as of right from the trial court's denials of its motions for summary disposition, for judgment notwithstanding the verdict, and for a new trial, and from the court's entry of judgment from the jury verdict for plaintiff. Harper contends that the trial court erred in denying its several motions on the ground that its student perfusionist,[1] who was on loan to defendant Henry Ford Hospital, was not a loaned servant. In addition, Harper claims that plaintiff's failure to introduce any standard of care testimony required a directed verdict in its favor and that the trial court erred in admitting at trial an expired contract between Harper and Henry Ford Hospital. We reverse.

On August 1, 1986, plaintiff's decedent, Narendra Parekh, underwent coronary artery bypass surgery at Henry Ford. At that time, Helen Crowe, a student at Harper Hospital's School of Perfusion Technology, had completed six months of classes and was in her first clinical rotation at Henry Ford. She was under the supervision of two clinical instructors, Michael Fried and Sandy Klar, who were both Henry Ford employees. On the day of Parekh's surgery, as Crowe set up the equip-

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

[1] According to trial testimony, a perfusionist is responsible for setting up and monitoring equipment used in heart bypass procedures. Part of the equipment is used to move blood from the patient to the heart-lung machine, which oxygenates the blood, and to return it to the patient.

ment, she advised Klar about a problem with the vent tubing line. When the patient went on the heart-lung machine, the machine pumped air into his blood vessels instead of creating a vacuum to remove the blood from the vessels. Brain damage occurred as a result of the air infusion, and the patient remained unconscious after surgery. Parekh was transferred to Wisconsin for treatment in a hyperbaric chamber, but he died on August 5, 1986.

In his first amended complaint, plaintiff alleged that Harper was liable because of Crowe's negligence in incorrectly attaching the tubing of the heart-lung machine. Harper moved for summary disposition pursuant to MCR 2.116(C)(8) and (10) and argued that, because Michigan does not recognize a claim against an educational institution for injurious actions by its students, plaintiff had failed to state a claim upon which relief could be granted. Harper also argued that there was no genuine issue of material fact as to whether, under the borrowed servant rule, Henry Ford had exclusive control over Crowe and, thus, Harper was not liable as Crowe's employer. The trial court denied Harper's motion under MCR 2.116(C)(8), finding that plaintiff's complaint had stated a claim on which relief could be granted. The trial court also concluded that plaintiff had created a genuine issue of fact as to whether Harper relinquished all of its right to control Crowe's actions during her rotation at Henry Ford and denied Harper's motion under MCR 2.116(C)(8).

At trial, after the close of plaintiff's proofs, Harper moved for a directed verdict on the ground that Crowe was a loaned servant. The trial court denied the motion, concluding that whether Crowe was acting under Harper's control was a question of fact for the jury.

Harper contends that the trial court erred in denying its motion for summary disposition under MCR 2.116(C)(10) and in denying its motion for a directed verdict. We agree.

Summary disposition of all or part of a claim or defense pursuant to MCR 2.116(C)(10) may be granted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim, and the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence available to it. *Dumas v Auto Club Ins Ass'n,* 168 Mich App 619, 626; 425 NW2d 480 (1988). The party opposing the motion has the burden of showing that a genuine issue of disputed fact exists. *Id.*

In deciding whether to grant a motion for a directed verdict brought under MCR 2.515, the trial court must view the evidence in a light most favorable to the opposing party and determine whether that party has established a prima facie case. *Reeves v Cincinnati, Inc,* 176 Mich App 181, 183; 439 NW2d 326 (1989); *Clery v Sherwood,* 151 Mich App 55, 63-64; 390 NW2d 682 (1986). A directed verdict is precluded where the evidence presents material issues of fact upon which reasonable minds can differ; those issues are to be decided by the trier of fact. *Reeves, supra; Dixon v W W Grainger, Inc,* 168 Mich App 107, 110; 423 NW2d 580 (1987). The trial court properly grants a directed verdict for the defendant only when the evidence, viewed in this manner, does not establish a prima facie case. *Reeves, supra* at 183-184; *Goldman v Phantom Freight, Inc,* 162 Mich App 472,

477; 413 NW2d 433 (1987), lv den 429 Mich 867 (1987).

In *Janik v Ford Motor Co,* 180 Mich 557, 562; 147 NW 510 (1914), quoting 26 Cyclopedia of Law & Procedure, p 1522, our Supreme Court explained the test to use in determining whether a person, to whom an employer has loaned its employee, has become liable as an employer for the employee's acts, without any actual employment contract or payment for service:

> "A person who avails himself of the use, temporarily, of the services of a servant regularly employed by another person may be liable as master for the acts of such servant during the temporary service. The test is whether in the particular service which he is engaged or requested to perform he continues liable to the direction and control of his original master or becomes subject to that of the person to whom he is lent or hired, or who requests his services. It is not so much the actual exercise of control which is regarded, as the right to exercise such control. To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under control of a third person. Subject to these rules the original master is not liable for injuries resulting from acts of the servant while under the control of a third person."

See also *Noble v Roadway Express, Inc,* 153 Mich App 12, 18-19; 394 NW2d 128 (1986), lv den 428 Mich 885 (1987). In applying this test, we look at the work the employee was performing when the injury for which suit has been brought was sustained. See *Sweetnam v Snow,* 187 Mich 414, 422; 153 NW 770 (1915).

When Parekh suffered his fatal injury, Harper had relinquished its right to control Crowe. Crowe

was under the supervision of Fried and Klar,
Henry Ford employees. She was using Henry
Ford's machines and equipment. See *Janik, supra*
at 563. Crowe had been instructed, before she
began her rotation, to conduct herself according to
Henry Ford's, not Harper's, protocols. No other
Harper employees were present, and even if others
had been present they would not have been al-
lowed to go into Henry Ford's operating room and
give instructions to a student on rotation.

In denying Harper's summary disposition mo-
tion under MCR 2.116(C)(10), the trial court consid-
ered a renewable Statement of Relationships, effec-
tive from January 1, 1983, through January 1,
1984, which stated Harper's and Henry Ford's
agreement regarding student perfusionists' rota-
tions. The court concluded:

> In the case at bar, the facts proferred [sic] by
> Harper in support of its motion do suggest that
> Ford exerted actual control over Crowe in the day
> to day activities. However, as indicated by the test,
> such actual control is not determinative. Rather,
> equally important is whether Harper surrendered
> all right to control Crowe. Certain portions of the
> Statement can be construed as reflecting that Har-
> per did not surrender all control. Specifically, the
> Court notes that under the Statement, Harper
> assumed responsibility for not only instructing its
> students in Ford's protocals [sic] but also for moni-
> toring for and enforcing compliance with Ford's
> protocal [sic]. Moreover, there is the express agree-
> ment in the Statement that Crowe would be re-
> garded as the employee of Harper.

We are not persuaded that Harper's instruction
of a student in Henry Ford's protocol before the
rotation began deprived Henry Ford of its right to
control the student during rotation. Harper's re-

sponsibility for monitoring and enforcing the student's compliance with Henry Ford's protocol was accomplished only through Henry Ford's own actions in monitoring the students. In addition, the statement in the agreement that Crowe was to be regarded as Harper's employee appears to have been for the purpose of limiting a student's entitlement to the benefits and other rights to which Henry Ford's own employees were entitled. Moreover, Crowe's status as Harper's employee was inherent in her status as a loaned servant.

Henry Ford also argues that the fact that Harper continued to pay Crowe a stipend during her rotation at Henry Ford indicated Harper's retention of control over her. The Court in *Janik, supra* at 562, recognized that the borrower of another's employee may become liable as an employer without any actual payment for service. In addition, this is not a workers' compensation case, in which the economic reality test for determining whether the loaned servant doctrine is applicable is used. See *Nichol v Billot,* 406 Mich 284, 294; 279 NW2d 761 (1979). It is under that test that who pays the employee becomes significant. *Id.*

The evidence relevant to Henry Ford's control, and Harper's lack of control, over Crowe simply did not present a material issue of fact upon which reasonable minds could differ. See *Reeves, supra* at 183. The trial court erred in denying Harper's motions for summary disposition and for a directed verdict.

In view of our decision on this issue, we need not address the other issues raised on appeal by Harper.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.